NOT FOR PUBLICATION

RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEC 23 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| LEE ARGUSH,<br><br>            Plaintiff,<br><br>v.<br><br>LPL FINANCIAL, LLC, LPL HOLDINGS INC., ANDREW PUTTERMAN, and FORTIGENT, LLC,<br><br>            Defendants. | Civ. No. 13-7821 |
| ALAN GAVORNIK,<br><br>            Plaintiff,<br><br>v.<br><br>LPL FINANCIAL, LLC, LPL HOLDINGS INC., ANDREW PUTTERMAN, and FORTIGENT, LLC,<br><br>            Defendants. | Civ. No. 14-955<br>(consolidated for pretrial purposes) |
| NICHOLAS MARINELLO,<br><br>            Plaintiff,<br><br>v.<br><br>LPL FINANCIAL, LLC, LPL HOLDINGS INC., ANDREW PUTTERMAN, and FORTIGENT, LLC,<br><br>            Defendants. | Civ. No. 14-956<br>(consolidated for pretrial purposes)<br><br>**OPINION** |

THOMPSON, U.S.D.J.

1

## INTRODUCTION

This matter is before the Court upon multiple motions. Two of the three plaintiffs in the above-captioned cases consolidated for pretrial purposes, Alan Gavornik and Nicholas Marinello (collectively "Gavornik and Marinello"), have each moved for partial summary judgment on liability. (Civ. No. 14-955, ECF No. 33; Civ. No. 14-956, ECF No. 33). Defendants LPL Financial, LLC ("LPL Financial") and LPL Holdings, Inc. ("LPL Holdings") (collectively "LPL" or "Defendants") oppose both motions. (Civ. No. 14-955, ECF No. 44; Civ. No. 14-956, ECF No. 43). Plaintiff Lee Argush ("Argush") has not moved for summary judgment. Defendants have moved for partial summary judgment on Counts Two and Three of Gavornik and Marinello's respective complaints. (Civ. No. 13-7821, ECF No. 92). Gavornik and Marinello oppose Defendants' motions. (Civ. No. 13-7821, ECF No. 114). Defendants have also moved for partial summary judgment on Counts Three and Seven of Argush's Complaint. (Civ. No. 13-7821, ECF No. 91). Argush opposes Defendants' motion. (Civ. No. 13-7821, ECF No. 112). The Court will address all of the parties' motions in this omnibus opinion. The Court has decided the motions based on the written submissions of the parties and a hearing held on October 20, 2016. For the reasons stated herein, Plaintiffs Gavornik and Marinello's motions will be denied and Defendants' motions will be denied.

## BACKGROUND

This case arises out of an employment dispute between the three named Plaintiffs and Defendant LPL Financial. Plaintiffs Argush, Gavornik and Marinello (collectively "Plaintiffs") are former employees of LPL Financial. LPL Holdings is the parent company of LPL Financial. All three Plaintiffs had their employment terminated by LPL Financial in 2013. The main issue is whether each of the three Plaintiffs were validly terminated "for cause."

2

Prior to June 2011, Plaintiffs were directors and senior officers of Concord Wealth Management Group ("Concord"). At that time, Concord was jointly owned by American Capital Acquisition Partners, LLC ("ACAP") and Financial Services Partners Fund I, LLC ("Financial Services") (collectively "Sellers"). Plaintiffs were the sole members and owners of ACAP. In June 2011, Concord, through its parent entity, was acquired by LPL Holdings. The terms of LPL Holdings' acquisition of Concord were set out in a document called the Stock Purchase Agreement ("SPA").

Beginning in June 2011, Plaintiffs became employed by LPL Financial. Both prior to and following the acquisition of Concord by LPL Holdings, Plaintiffs were physically based in an office in Matawan, New Jersey. The Plaintiffs individually executed multiple documents concerning their employment relationship with LPL Financial including Employment Agreements, Stock Option Agreements, and the SPA. The SPA contained a Delaware choice of law provision, while the Employment Agreements contained no choice of law provision.

Under the employment agreements, in the event Plaintiffs were terminated, Plaintiffs were to receive certain benefits including salary, stock options, and a pro rata bonus for the year of termination. If Plaintiffs were terminated for cause, Plaintiffs would not receive some of these benefits. The definition of termination "for cause" that governed the employment relationship between the individual Plaintiffs and LPL Financial was contained in the SPA. Under the SPA, termination for "cause" is defined as follows:

> (1) failure to substantially perform such Person's duties as an employee of LPL (other than as a result of a permanent disability) for a period of ninety (90) days following notice to LPL to such Person of such failure; (2) fraud, embezzlement, dishonesty or theft in connection with such Person's duties; (3) an act or acts constituting a felony, a violation of any federal or state securities or banking law or a misdemeanor involving moral turpitude; *(4) willful misfeasance, willful misconduct, or gross negligence in connection with such Person's duties or an act or omission which is injurious to the financial condition or business reputation of LPL*; or (5) breach of this Section 6.09.

3

(Civ. No. 14-955, ECF No, 33-3, Levy Decl. Ex. A.) (emphasis added).

### I. Plaintiffs Gavornik and Marinello

LPL Financial terminated Plaintiffs Gavornik and Marinello on December 27, 2013. LPL Financial claims that it validly terminated Gavornik and Marinello "for cause" because they "obstructed LPL in obtaining indemnification payments to which LPL was contractually entitled from an entity they controlled." (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n. Br. at 1).

During May 2013, Defendants allege that LPL Holdings started to make written demands for indemnification on Gavornik and Marinello. (Civ. No. 14-956, ECF No. 43-1, Defs.' Resp. to Pls.' Statement of Undisputed Material Facts ("Defs.' Resp.") at ¶ 15). Defendants claim that the indemnification demands related to money paid by LPL for legal services that ACAP was contractually obligated to pay under an indemnification provision in the SPA. (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n. Br. at 1-2). The parties agree that Gavornik and Marinello, together with Argush, owned ACAP. (Civ. No. 14-955, ECF No. 48-1, Pls.' Resp. to Defs.' Resp. Statement of Additional Undisputed Material Facts at ¶ 1). Defendants allege that ACAP was required to indemnify LPL and that Gavornik and Marinello obstructed LPL in obtaining the indemnification payments (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n. Br. at 1). Gavornik and Marinello argue that while ACAP may have had indemnity obligations under the SPA, Gavornik and Marinello were not individually obligated to indemnify LPL. (Civ. No. 14-956, ECF No. 33-2, Pls.' Mot. at 2-3).

Defendants allege that multiple written communications were sent to Gavornik and Marinello requesting that the outstanding monies be reimbursed, yet no payment was made. (*Id.* at 2). Shortly thereafter, LPL Financial terminated Plaintiffs Gavornik and Marinello on December 27, 2013.

4

## II. Plaintiff Argush

Plaintiff Argush was terminated roughly four months earlier, and on a different basis, than Gavornik and Marinello. Argush was terminated on August 6, 2013. (Civ. No. 13-7821, ECF No. 121-1, Defs.' Resp. to Pl.'s SUMF at ¶ 116). LPL Financial claims that it validly terminated Argush for cause because Argush "willfully and repeatedly violated LPL's written directive to him to work remotely." (Civ. No. 13-7821, ECF No. 91-1, Defs.' Mot. at 1).

On July 30, 2013, Argush had a meeting with Andrew Putterman, his direct supervisor ("Putterman"), Anna Orsenigo, a Vice President of Human Resources of LPL Financial ("Orsenigo") and Gavornik ("July 30th Meeting"). (Civ. No. 13-7821, ECF No. 112-1, Pl.'s Resp. to Defs.' SUMF at ¶ 44). At that meeting, Argush alleges that Putterman orally communicated to him that he was permitted to continue to come into the office to work until LPL Financial could set up Argush with the capability to work remotely. (Civ. No. 13-7821, ECF No. 112, Pl.'s Opp'n. Br. at 2).

LPL Financial maintains that notwithstanding any alleged oral communication at the July 30th meeting, LPL Financial sent Argush four clear written directives after the July 30th meeting instructing Argush that he was not to report to the office to work without first receiving advance permission. LPL Financial further alleges that Argush disregarded its written directives and continued to report to the office on August 1st, 2nd, 5th, 6th, and 7th. (Civ. No. 13-7821, ECF No. 121-1, Defs.' Reply SUMF at ¶¶ 52, 55, 58, 61). LPL Financial claims that it terminated Argush's employment on August 6th via email. (*Id.* at ¶¶ 62, 64; Civ. No. 13-7821, ECF No. 91-3, DiSomma Decl. Ex. 19). In essence, LPL Financial claims that, as a result of Argush's failing to abide by its clear directives, it validly terminated Argush "for cause" pursuant to Section 6.09 of the SPA due to Argush's "willful misfeasance, willful misconduct, or gross negligence in

connection with such Person's duties or an act or omission which is injurious to the financial condition or business reputation of LPL." (*Id.* at ¶¶ 62, 63).

**III. Procedural History**

*Argush v. LPL Financial, et al.* is the lead case, which was removed from Superior Court of New Jersey, Law Division, Monmouth County, to this Court in December 2013. (Civ. No. 13-7821, ECF No. 1). *Gavornik v. LPL Financial, et. al.* and *Marinello v. LPL Financial, et. al.* (Civ. No. 14-956) were both filed in this Court in February 2014. (Civ. No. 14-955, ECF No. 1; Civ. No, 14-956, ECF No. 1). The three cases have been consolidated for pretrial purposes. (*See* Civ. No. 13-7821, ECF No. 27). On August 5, 2014, this Court granted in part Defendants' motion to dismiss in each of the three cases.[1] (Civ. No. 13-7821, ECF No. 22; Civ. No. 14-955, ECF No. 20; Civ. No. 14-956, ECF No. 20). Additionally, on August 24, 2016, this Court granted Defendants' Motion to Dismiss Count Four of Plaintiffs' Respective Complaints, which sought a declaratory judgment that Plaintiffs' restrictive covenants were null and void. (Civ. No. 13-7821, ECF No. 110). As a result, in each case, Plaintiff has two remaining claims against Defendants: Breach of Employment Agreement and Breach of Contract.

Currently before the Court are five motions for summary judgment in these consolidated cases: (1) Plaintiff Gavornik's Motion for Partial Summary Judgment on Liability (Civ. No. 14-955, ECF No. 33); (2) Plaintiff Marinello's Motion for Partial Summary Judgment on Liability (Civ. No. 14-956, ECF No. 33); (3) Defendants' Motion for Summary Judgment on Counts Two and Three of Plaintiff Gavornik and Plaintiff Marinello's Respective Complaints (Civ. No. 13-7821, ECF No. 92); (4) Defendants' Motion for Summary Judgment on Count Four of All

---

[1] The Court dismissed each of the Plaintiffs' claims for: (1) violation of the Conscientious Employee Protection Act ("CEPA"); and (2) tortious interference. The Court also dismissed Plaintiff Argush's claims for breach of the covenant of good faith and fair dealing and conversion.

Plaintiffs' Respective Complaints (Civ. No. 13-7821, ECF No. 94);[2] (5) Defendants' Motion for Summary Judgment on Counts Three and Seven of Plaintiff Argush's Complaint (Civ. No. 13-7821, ECF No. 91). The third Plaintiff in these consolidated cases, Argush, did not move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[2] As a result of this Court's dismissal of Count Four of Plaintiffs' respective complaints (*See* Civ. No. 13-7821, ECF No. 110), this motion is now moot.

## ANALYSIS

### I. Plaintiff Gavornik and Plaintiff Marinello's Summary Judgment Motions

Initially, the Court notes that Gavornik and Marinello submitted virtually identical motions for summary judgment on liability. Therefore, the Court will address both Plaintiffs' motions in this section. Gavornik and Marinello each have two remaining claims in this case: Breach of Employment Agreement and Breach of Contract. (*See* Civ. No. 14-955, ECF Nos. 20-21; Civ. No. 14-956, ECF Nos. 20-21). Both Plaintiffs move for partial summary judgment on liability on these claims. There are two main issues that the Court must address: (1) what law applies to this dispute and (2) whether LPL Financial's termination of the Plaintiffs constitutes a Breach of Contract or Breach of Employment Agreement.

#### a. Choice of Law Analysis

The first issue that the Court must address is what law applies to the present dispute. Defendants argue that Delaware law should apply, while Gavornik and Marinello appear to argue that New Jersey law applies. (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n. Br. at 16 n. 9 *citing* Civ. No. 13-7821, ECF No. 92-1, Defs.' Opp'n. Br. at 17–18; Civ. No. 14-955, ECF No. 33-1). A federal court sitting in diversity applies the forum state's choice of law rules to determine what substantive law applies. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496–98 (1941); *see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) (noting "[a]s this was a diversity case filed in New Jersey, New Jersey choice of law rules govern"). New Jersey choice of law principles require a Court to first determine if there is an actual conflict between two potentially applicable laws. If there is no conflict, then because a New Jersey court would apply its own law in such a case, a federal court sitting in diversity must also apply New Jersey law. *Lebegern*, 471 F.3d at 428. Here, while Defendants argue that Delaware law should apply, Defendants concede that there is no relevant conflict between Delaware law and New Jersey law. (Civ. No. 14-956,

8

ECF No. 43, Defs.' Opp'n. Br. at 16 n. 9). Therefore, the choice of law inquiry ends there, and New Jersey law applies to the dispute.

### b. Counts Two and Three: Breach of Employment Agreement and Breach of Contract

In order to state a claim for breach of contract in New Jersey, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot, Inc.,* 507 F.3d 188, 204 (3d Cir. 2007). The main issue that the Court must address with respect to the alleged breach of contract here is whether LPL Financial validly terminated each Plaintiff "for cause." Under New Jersey law, a termination is considered "for cause" if the termination is "based on facts that are (1) supported by substantial evidence and (2) are reasonably believed by the employer to be true and also (3) is not for an arbitrary, capricious, or illegal reason." *Spano v. JP Morgan Chase Bank,* 2011 WL 6934837, at *6 (D.N.J. Dec. 30, 2011) (quoting *Maietta v. United Parcel Serv.,* 749 F. Supp. 1344, 1363 (D.N.J. 1990).

Here, the parties agree that the definition of termination for "cause" was contained in the SPA. In relevant part, Section 6.09 of the SPA defines "cause" as "willful misfeasance, willful misconduct, or gross negligence in connection with such Person's duties or an act or omission which is injurious to the financial condition or business reputation of LPL." (Civ. No. 14-955, ECF No. 33-3, Levy Decl. Ex. A). Defendants allege that Gavornik and Marinello were terminated as a result of their performing an "act or omission which is injurious to the financial condition or business reputation of LPL." (Civ. No. 14-956, ECF No. 43-1, Defendants' Resp. at ¶ 41). Specifically, Defendants claim that Gavornik and Marinello were terminated "for cause" for failing to abide by their indemnification obligations in the SPA which required Plaintiffs to

9

indemnify LPL for certain legal fees paid by LPL. (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n Br. at 1-2).

The relevant indemnification provision in the SPA[3] specifically refers to the indemnification obligations of the "Sellers" for the purposes of that agreement. Under the SPA, the "Sellers" were ACAP and Financial Services. (Civ. No. 14-956, ECF No. 43-1, "Defs.' Resp." at ¶ 17). Gavornik and Marinello were two of the three owners and members of ACAP. (*Id.* at ¶ 1).

Gavornik and Marinello argue that they had no obligation to personally indemnify LPL and that their "reasonable refusal to pay an obligation not owed cannot be an 'act or omission which is injurious to the financial condition or business reputation of LPL.'" (Civ. No. 14-955, ECF No. 48, Pl.'s Reply Br. at 8). Gavornik and Marinello also argue that LPL's financial condition was not injured by any act or omission of Gavornik and Marinello because $500,000 of the purchase price paid by LPL to acquire Concord was set aside in an escrow account to secure

---

[3] In relevant part, the provision reads:

Section 10.01. Indemnification by the Sellers.
(a) Indemnification. Subject to the limitations and other provisions set forth in this ARTICLE X, from and after the Closing, each Seller shall jointly and severally indemnify and hold harmless Buyer [LPL] and its Affiliates (including, following the Closing, each Acquired Company), and the Representatives, Affiliates, successors and assigns of each of the foregoing Persons (each, a "Buyer Indemnified Person"), from, against and in respect of any and all Actions, Liabilities, Governmental Orders, Encumbrances, losses, damages, bonds, dues, assessments, fines, penalties, Taxes, fees, costs (including costs of investigation, defense and enforcement of this Agreement), expenses or amounts paid in settlement (in each case, including reasonable attorneys' and experts' fees and expenses), whether or not involving a Third Party Claim (collectively, "Losses"), incurred or suffered by Buyer Indemnified Persons or any of them as a result of, arising out of or relating to, directly or indirectly:
…
(v) the facts related to the SEC Review; or

(vi) the Third Party Claim identified on Schedule 10.01(a)(vi) (which Third Party Claim will be subject to the provisions of Section 10.04); provided, however, that Buyer agrees to reimburse Sellers for 50% of any Losses arising out of the Third Party Claim identified on Schedule 10.01(a)(vi) up to a maximum reimbursement of one hundred thousand dollars ($100,000), such amount to be payable upon final resolution or settlement of the Third Party Claim.

(Civ. No. 14-955, ECF No. 48-1, Pls.' Resp. to Defs.' Resp. Statement of Additional Undisputed Material Facts at ¶ 16).

the debt supposedly in issue. (*Id.* at 2–3). As a result, Gavornik and Marinello claim that they did not commit an act or omission injurious to the financial condition or business reputation of LPL, and therefore, LPL Financial lacked cause to terminate their employment. Defendants argue that ACAP could only act through the Plaintiffs, and as a result, Gavornik and Marinello had an obligation to indemnify or cause ACAP to indemnify LPL. (Civ. No. 14-956, ECF No. 43, Defs.' Opp'n. Br. at 2). Defendants claim that this failure to cause LPL Holdings to be indemnified was a valid ground for terminating Plaintiffs for cause.

The Court is persuaded that there is a genuine factual dispute as to whether Gavornik and Marinello had an obligation to indemnify LPL, or cause LPL to be indemnified, under the SPA. The Court is similarly persuaded that a genuine factual dispute exists as to whether Gavornik and Marinello had the ability to cause ACAP to fulfill its indemnification obligation under the SPA, or whether unanimous consent of all three members of ACAP would be required. Therefore, material questions of fact still remain as to whether Gavornik and Marinello committed acts or omissions which were injurious to the financial condition or business reputation of LPL and whether Gavornik and Marinello were validly terminated for cause. Gavornik and Marinello have not sufficiently demonstrated that LPL Financial is liable for breach of contract and Gavornik and Marinello's motions for partial summary judgment on liability must be denied.

## II. Defendants' Summary Judgment Motions on Counts Two and Three of Plaintiff Gavornik and Marinello's Respective Complaints

Defendants move for summary judgment on Counts Two and Three of Gavornik and Marinello's respective complaints, the same counts just discussed in the previous section analyzing Gavornik and Marinello's summary judgment motions. (Civ. No. 13-7821, ECF No. 92). On Defendants' Motion for Summary Judgment, the parties make very similar arguments to those which were made on Gavornik and Marinello's motions for partial summary judgment on

11

liability. The Court is persuaded that the same factual issues that precluded Gavornik and Marinello from prevailing on their motions also preclude Defendants from prevailing on their motion for summary judgment. Therefore, for the reasons discussed in the preceding section, Defendants' motions for summary judgment on counts two and three of Gavornik and Marinello's respective complaints are denied.

### III. Defendants' Summary Judgment Motion on Counts Three and Seven of Plaintiff Argush's Complaint

#### a. Choice of Law Analysis

As noted the Background section of this Opinion, the facts relating to Plaintiff Argush's claims are distinct. To reiterate, the Court must first address what law applies here. Argush argues that New Jersey law should apply, while Defendants argue that Delaware law should apply. (ECF No. 91-1, Pl.'s Br. at 11–12; ECF No. 112, Defs.' Opp. Br, at 24–28). As discussed *supra* in Section I(a) of the Analysis Section of this Opinion, if there is no conflict between two potentially applicable laws, and a New Jersey court would apply its own law, a federal court sitting in diversity must also apply New Jersey law. *Lebegern*, 471 F.3d at 428. Here, the parties agree that there is no relevant conflict between Delaware law and New Jersey law. (ECF No. 91-1, Pl.'s Br. at 11 n.5; ECF No. 112, Defs.' Opp. Br, at 24). Therefore, the choice of law inquiry ends there, and New Jersey law applies to the dispute.

#### b. Counts Three and Seven: Breach of Contract and Breach of Employment Agreement

Argush's Corrected Amended Complaint contains two separate breach of contract claims. Defendants argue that no breach occurred because Argush was terminated for cause, and thus, Argush cannot prevail on his breach of contract claims. Argush argues that genuine issues of material fact remain as to whether or not Argush was validly terminated for cause, and

12

Defendants' summary judgment motion must be denied. In order to state a claim for breach of contract in New Jersey, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot, Inc.*, 507 F.3d 188, 204 (3d Cir. 2007).

When the alleged contractual breach consists of termination without cause, a Court must determine whether just cause existed at the time of termination. In New Jersey, "[a] discharge for just cause is defined as one that is 'based on facts that are (1) supported by substantial evidence and (2) are reasonably believed by the employer to be true and also (3) is not for any arbitrary, capricious, or illegal reason." *Spano v. JP Morgan Chase Bank, N.A.*, 2011 WL 6934837 at *6 (D.N.J. Dec. 30, 2011) (quoting *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1363 (D.N.J. 1990)).

Here, the parties agree that the definition of termination for "cause" was contained in the SPA. In relevant part, Section 6.09 of the SPA defines "cause" as "willful misfeasance, willful misconduct, or gross negligence in connection with such Person's duties." (Civ. No. 13-7821, ECF No. 112-1, Pl.'s Resp. to Defs.' SUMF at ¶ 13). Additionally, it is undisputed that the Offer Letter signed by both parties included a provision that defined Argush's employment as "at-will" and permitted LPL Financial to modify Argush's work responsibilities.[4] (*Id.* at ¶ 19). It is also undisputed that on July 30, 2013, Argush had a meeting with Andrew Putterman, his direct

---

[4] The relevant text of this provision reads: "If you accept our offer, your employment with LPL Financial will be "at-will." This means your employment is not for any specific period of time and can be terminated by you at any time for any reason. Likewise, LPL Financial may terminate the employment relationship at any time, with or without "Cause" or advance notice. In addition, LPL Financial reserves the right to modify your position, duties or reporting relationship to meet business needs and to use discretion in deciding on appropriate discipline. No such modification or exercise of discretion shall be treated as termination without "Cause." Any change to the at-will employment relationship must be by a specific, written agreement signed by you and the LPL Financial President. Any obligation to pay severance, if any, on account of a termination by the Company without "Cause" hereunder shall not change the nature of your employment as "at-will." (*Id.* at ¶ 19).

13

supervisor ("Putterman"), Anna Orsenigo, a Vice President of Human Resources of LPL Financial ("Orsenigo"), and Plaintiff Gavornik ("July 30th Meeting"). (Civ. No. 13-7821, ECF No. 112-1, Pl.'s Resp. to Defs.' SUMF at ¶ 44).

Defendants argue that Argush was validly terminated with cause as a result of his engaging in willful malfeasance and misconduct. Specifically, Defendants argue that Argush violated four separate written directives[5] instructing Argush to work remotely and also that he should not report to the office to work without first receiving advance permission, including one directive sent on August 5th by his direct supervisor, Putterman. (Civ. No. 13-7821, Defs.' Br., ECF No. 91-1 at 16). Defendants claim that these written directives were an exercise of the right afforded to LPL Financial in the Employment Agreement to modify Argush's work responsibilities. (*Id.* at ¶ 13). Essentially, Defendants argue that Argush was validly terminated for cause on August 6th for engaging in willful malfeasance and misconduct by violating these directives and reporting to the office on August 1st, 2nd, 5th and 6th.

Argush argues that, at the July 30th meeting, he received oral permission to continue to report to the office from his direct supervisor, Putterman, and that the aforementioned written directives contradicted this oral permission. Argush claims that Putterman granted him permission to continue to report to the office until LPL Financial could adequately set up capabilities for Argush to work remotely. (Civ. No. 13-7821, Pl. Opp'n. Br., ECF No. 112 at 2). Argush supports this claim with his own deposition testimony (Civ. No. 13-7821, ECF No. 91-3, DiSomma Decl. Ex. 6 (Argush Dep. Tr.) at 277:17-277:21)) and with deposition testimony of Plaintiff Gavornik (Civ. No. 13-7821, ECF No. 91-3, DiSomma Decl. Ex. 8 (Gavornik Dep. Tr.

---

[5] The written directives consisted of four documents: (1) a July 30th Memorandum from Orsenigo; (2) a July 31st email from Orsenigo; (3) an August 2nd email from another Vice President of Human Resources of LPL Financial, Ron McGuire ("McGuire"); and 4) an August 5th email from Putterman. (Civ. No. 13-7821, Defs.' Mot., ECF No. 91-1 at 12-16).

14

at 209:12-209:21)). Considering these two distinct narratives, the Court is persuaded that there exist genuine issues of material fact as to whether Argush had permission to report to the office on August 1st, 2nd, and 5th and whether his reporting to the office on those days constituted willful misconduct or malfeasance sufficient to terminate him for cause.

Argush also argues that he did not receive the August 5th email from Putterman until after he arrived at the office on the morning of August 6th. (Civ. No. 13-7821, Pl. Opp'n. Br., ECF No. 112 at 2). Whether or not Argush received and was aware of the only written directive issued by his direct supervisor instructing him not to report to the office similarly is a factual dispute that is not appropriate for resolution on this record.

Viewing the evidence in the light most favorable to the non-moving party, the Court is persuaded that genuine issues of material fact remain as to whether Argush's conduct constituted willful misconduct or malfeasance and whether Argush was validly terminated for cause. These types of factual disputes can be only be resolved at trial. As a result, Defendants' Motion for Summary Judgment on Counts Three and Seven of Argush's Complaint will be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Gavornik and Marinello's motions for summary judgment will be denied and Defendants' motions for summary judgment will be denied. An appropriate order will follow.

*Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: Dec. 23, 2016